CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

GEORGE O. HAGEMAN (CABN 332457)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5044
    George.Hageman@usdoj.gov

Attorneys for United States of America

> **FILED**
> **May 18, 2026**
>
> Mark B. Busby
> CLERK, U.S. DISTRICT COURT
> NORTHERN DISTRICT OF CALIFORNIA
> OAKLAND

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:26-cr-00189-YGR |
| Plaintiff, | UNITED STATES' MOTION FOR DETENTION |
| v. | Date:    May 20, 2026 |
| | Time:   10:30 a.m. |
| JARICO ANDERSON, | Court:   Honorable Ajay S. Krishnan |
| Defendant. | |

GOVERNMENT DETENTION MEMORANDUM
4:26-cr-00189-YGR

## I.   **INTRODUCTION**

Defendant Jarico Anderson has been caught with firearms five times in the last four years.  Most recently, in March 2026, he was caught with a loaded Glock 27 with an extended magazine, an obliterated serial number, and a fully automatic switch.  In short, a machine gun.  He has threatened rival gang members with violence including as recently as September 2025 while awaiting sentencing for a prior firearms conviction.  He has fled from or attempted to elude law enforcement on multiple occasions and has a proclivity for using false identification.  The defendant is both a danger to the community and a risk of flight and no condition or combination of conditions is sufficient.  He should be detained pending trial.

## II.   **LEGAL STANDARDS**

Under the Bail Reform Act, the Court "shall hold" a detention hearing in a felony case that involves the possession or use of a firearm.  18 U.S.C. § 3142(f)(1)(E).

The Court must detain a defendant before trial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present.  *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).  A defendant's danger to the community must be supported by clear and convincing evidence, but a defendant's flight risk need only be supported by a preponderance of the evidence.  *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)."  *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019).  Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.  *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

GOVERNMENT DETENTION MEMORANDUM          1
4:26-cr-00189-YGR

The rules of evidence do not apply at a detention hearing.  18 U.S.C. § 3142(f).  It is well-settled that at a detention hearing, the government may present evidence by way of an evidentiary proffer sufficient to make the court aware of the defendant's role in the offense, the weight of the evidence, and other relevant factors.  *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 743 (1987).

### III.   OFFENSE CONDUCT

On March 11, 2026, law enforcement prepared to execute a search warrant for the defendant's person and his residence.  As officers approached him on the sidewalk, the defendant ran, causing him to drop a Glock 27 Gen 4 .40 caliber firearm.  The Glock 27 was fully loaded with one .40 caliber round in the chamber and seventeen .40 caliber rounds in the extended magazine.  As confirmed by later testing, it had a "switch" that enabled it to fire fully automatic instead of semi-automatic.  The serial number was obliterated.  The subsequent search of his bedroom found a San Francisco jail bracelet with his name and photo, seven driver's licenses and seven credit cards in other peoples' names, 67 additional rounds of ammunition, four magazines, and one magazine extender.  At the time of the offense, the defendant had a prior felony conviction in San Francisco Superior Court for carrying a loaded weapon in a public place; he had been convicted in June 2025 and sentenced in October 2025.

### IV.   ARGUMENT

#### A.   Danger to the Community

1. *The defendant carried a machine gun with an obliterated serial number and an extended magazine.*

The firearm seized from the defendant on March 11, 2026, was not just any firearm.  First, it had an obliterated serial number, rendering it much more difficult to trace if it were to be used in criminal activity (beyond his mere possession of it which, of course, is also criminal).  Second, it had an extended magazine enabling it to carry seventeen rounds plus one round in the chamber.  It was not just a non-California model that carried more than ten rounds, but rather a special after-market magazine that added two additional rounds to the carrying capacity.  Third, it had a "switch" device that converted it from semi-automatic fire to fully automatic fire, and ballistics testing confirmed that it functioned as intended.  Colloquially and legally speaking, this was a machine gun.

### 2. *The defendant is a clear and present danger to others.*

The defendant's Instagram history over the past year sheds light on his current dangerousness. Between July and September 2025, the defendant (a Double Rock gang member[1]) repeatedly threatens to kill a rival gang member, saying things like: "we was tryna catch a stragler like we always do" (note: slang for killing a gang member who is by himself), "we really was tryna catch it so all phones on airplane mode," "we gone have fun just strap them kleats" (note: slang for preparing for a shootout), "niggas betta switch program asap" (note: slang for suggesting they change their pattern of life or they will be ambushed), "when yu ready ta hoop call me," "we tried on 9/6 day and once again NO CALL NO SHOW now shut up" (note: referencing meeting up for a shootout), and "we was all outside till 3am no excuses." In September 2025, the defendant and several others are shown in a video each waving firearms in the air dancing to music.[2]  In November 2025, the defendant attempted to buy two fully automatic "drakes" or "dracos" (slang for assault pistols), seemingly using an ongoing gang war between Anderson's Double Rock gang and a rival Tre-4 gang as a justification: "what's the ticket he selling em both I want em both we need all Kay's rn" (note: "rn" is slang for "right now").  It is in this context—a previous attempt to purchase fully automatic firearms, coming on the heels of threats of violence against a specific rival gang member, in the midst of an ongoing gang war—that the defendant was caught in possession of the fully automatic Glock with the obliterated serial number and the extended magazine on March 11, 2026.

The government expects the defense to argue that he does not have any convictions for acts of violence.  That is true.  However, Pretrial's record check notes he was arrested for assault with a firearm on person in November 2020 and first degree murder in August 2021 (a case that the Contra Costa County District Attorney's Office indicates is "under review").  He has also been involved in shootings in February 2025 (when his vehicle was shot at during a drive-by) and March 2026 (when he showed up to the hospital with a gunshot wound to the foot); as is common in gang shootings, the defendant refused to provide any information about how he was shot in the second incident, and the government does not know

---

[1] The defendant's Instagram account is "bigg5iivee," which is a reference to the "5" or "500" imagery favored by Double Rock.  He has released a rap video where he says, "I'm big 5…bitch I'm 500 I got gang enhancements."  In June 2022, he sent an Instagram message saying, "bitch ima active gang member."

[2] The video was sent to the defendant in September 2025.  He acknowledges being present ("we gotta do it again asap") but it is admittedly not clear when the video was filmed.

GOVERNMENT DETENTION MEMORANDUM       3
4:26-cr-00189-YGR

whether he was the instigator of merely a victim. In any case, the defendant's lack of convictions for acts of violence does not moot his current danger to any other person or the community under 18 U.S.C. § 3142(g).

Similarly, the government also expects the defense to imply that the defendant only carried the gun for personal protection. First, the Instagram threats between July and September 2025 show that the defendant is the aggressor and instigator at least some part of the time. Second, personal protection (even if true) is not a defense to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). That may be a mitigation argument at sentencing, but it is actually an aggravating argument for detention because it indicates that the defendant would feel forced to acquire yet another firearm if he were released onto the street. *Cf. United States v. Sikes*, No. CR 421-095, 2022 U.S. Dist. LEXIS 35812, at *7 (S.D. Ga. Mar. 1, 2022) (analyzing "danger" to "any person" including "himself").

       3.    *The defendant has been caught with a firearm five times in just four years.*

In May 2022, the Vacaville Police Department conducted a traffic stop on the defendant based on a Ramey warrant for a burglary out of Richmond where over $85,000 of liquor was stolen. A search of the vehicle, of which the defendant was the sole occupant, found a Glock 22 .40 caliber handgun underneath the driver's seat. The Glock 22 had been reported stolen by FBI Sacramento in January 2016.[3] The Glock had one loaded 15 round magazine, and there was also a loaded 50 round drum magazine underneath the backseat on the passenger's side—both of which are illegal to possess in California.

In November 2022, a search warrant was executed at his residence in Vacaville. In the defendant's bedroom, officers found a California ID card in his name, a Glock handgun lower receiver, a 50 round drum magazine loaded with 33 9mm cartridges, an empty 15 round Glock magazine, and four loose cartridges of ammunition. In the hallway, officers found a ghost gun manufacturing kit, two pistol magazines, two loose cartridges, and several Glock magazine end caps. In a child's bedroom (which also contained children's clothing and toys), officers found an empty Glock magazine, two magazine extenders, and one AR buffer tube. In the kitchen, officers found an AR buffer tube spring and a Glock pistol backstrap. Inside the toilet tank, officers found a pistol upper slide (with a serial number matching

---

[3] The government is not alleging that the defendant is the one who stole it. However, his possession of it indicates that the firearm was very likely purchased illegally on the black market.

GOVERNMENT DETENTION MEMORANDUM    4
4:26-cr-00189-YGR

the Glock lower receiver from his bedroom) with a fully automatic Glock switch. Inside the toilet's P-trap, officers found a pistol barrel and pistol spring.

In September 2023, the San Francisco Police Department observed the defendant and another person driving a vehicle with a stolen license plate. When officers approached him after he had exited the driver's seat, the defendant ran. Once the officers caught up and detained the defendant, they found a loaded Glock 20 handgun with a fully automatic switch and an extended magazine in his pants. The firearm was reported stolen out of Richmond.

In August 2025, the Los Angeles Police Department spotted the defendant clearly avoiding the officers and nervously appearing to conceal an L-shaped bulge in his pants pocket. Officers tried to detain him but he ran away. During the foot pursuit, officers heard a loud metallic ping. When they caught up to him, he no longer had the L-shaped bulge in his pants. Near the area where they heard the ping, officers found a loaded black Glock 30 .45 caliber firearm in the gutter.

In March 2026—the instant offense—the defendant was caught with a loaded Glock firearm with an extended magazine, a fully automatic switch, and an obliterated serial number.

This track record shows regular and repeated possession of firearms (including machine guns on three separate occasions). The only break in the past four years was during the period from September 2023 to summer 2025 when the defendant was in custody awaiting trial for, not surprisingly, possession of a firearm. This conduct spans multiple years and multiple cities: San Francisco, Vacaville, Los Angeles. It is reasonable to expect that the defendant will acquire yet another firearm if released.

**B.      Risk of Flight**

First, the defendant has a history of engaging in criminal activity while on release. Between July and September 2025, the defendant repeatedly threatened to kill a rival gang member and even mentions multiple instances where he went to the rival's territory and waited for him to show up so that they could engage in a shootout. Then in September 2025, he appears to have attended a party where he was waving a firearm in the air. All of this occurred after his felony firearms conviction in June 2025 while he was awaiting sentencing in October 2025.

Second, the defendant has a history of possessing and/or using false identification. In January 2023, he was convicted of providing false identification to a peace officer. In the instant offense in March

GOVERNMENT DETENTION MEMORANDUM      5
4:26-cr-00189-YGR

2026, officers searched his bedroom and found five Florida driver's licenses, one South Carolina driver's license, six US Bank credit cards, and one Navy Federal credit card—none of them in his name.

Third, the defendant has a history of fleeing from or eluding law enforcement. He ran from the police in September 2023, August 2025, and March 2026. On Instagram in July and August 2025, the defendant discusses the tactic of putting all their phones on airplane mode and having "good plates" (i.e. swapped or stolen license plates) before the shooting presumably so that they cannot be tracked by law enforcement. During the search of his residence in November 2022, the defendant clearly made great efforts to hide firearms and firearm parts inside a toilet tank and even a child's bedroom.

Fourth, he has a greater incentive to flee now that he faces a sentence several years longer than anything he has served before. *See United States v. Gebro*, 948 F.2d 1118, 1122 (9th Cir. 1991) ("knowledge of the fact that he was sentenced to a lengthy period of incarceration makes it more likely that he will flee").

Together, these factors indicate that the defendant has both the inclination and the capability to flee, and that no condition or combination of conditions can assure his appearance. It is true that he was granted pretrial release in the state prosecution of the instant offense. Some of his appearances have been waived, but the government is not aware of any failures to appear at non-waived hearings. He rightly deserves credit for showing up. However, the state court judge's decision to release the defendant is not binding on this Court, and that judge was likely unaware of the defendant's entire history (as laid out in this memo). Therefore, the government submits that his pretrial release in the state case should not be dispositive in the analysis here.

## V.   CONCLUSION

Given the lack of conditions or combination of conditions that can reasonably assure the safety of the community and his appearance, the government requests that the defendant be detained pending trial.

DATED: May 18, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


 /s/
GEORGE O. HAGEMAN
Assistant United States Attorney

GOVERNMENT DETENTION MEMORANDUM          6
4:26-cr-00189-YGR